2013 COA 12

**TARGET CORPORATION, a Minnesota corporation, Plaintiff–Appellee,**

v.

**PRESTIGE MAINTENANCE USA, LTD., Defendant–Appellant.**

No. 12CA0445.

Colorado Court of Appeals, Div. VII.

Jan. 31, 2013.

Rehearing Denied April 18, 2013.

Montgomery, Kolodny, Amatuzio & Dusbabek, LLP, John R. Chase, Krista Maher, Denver, Colorado, for Plaintiff–Appellee.

White and Steele, P.C., John Lebsack, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge HAWTHORNE.

¶ 1 Defendant, Prestige Maintenance USA, Ltd. (Prestige), appeals the trial court's judgment awarding future damages to plaintiff, Target Corporation (Target). We affirm.

¶ 2 We publish this opinion because we conclude that, as matters of first impression in Colorado, for choice of law purposes: (1) the sufficiency of evidence supporting a damages award is a substantive issue; and (2) whether an issue is preserved for appeal is an issue of judicial administration.

## I.   Facts and Procedural History

¶ 3 Prestige had contracted with Target to provide cleaning services at Target stores. The contract provided that Prestige would indemnify Target for, among other things, all injuries or damages relating to or arising out of Prestige's performance of its services.

¶ 4 While using a vacuum cleaner, a Prestige employee caused Johanna Cleveland, a Target employee, to fall and injure her right knee while working in a Colorado Target store.

¶ 5 A doctor recommended that Cleveland undergo total knee replacement surgery. She filed a workers' compensation claim against Target to cover the costs stemming from the injury. An administrative law judge found that Target was liable for the injury and directed Target to pay for the surgery.

¶ 6 Following the surgery, Cleveland continued to have stability problems. Her knee later buckled, causing her to fall and tear her left rotator cuff. She then underwent a partial knee replacement, which was also unsuccessful. Doctors recommended that she undergo shoulder surgery and another knee surgery.

¶ 7 Target filed a breach of contract action against Prestige, seeking, pursuant to their contract, indemnification for Cleveland's injuries and damages. Prestige denied that the contract required it to indemnify Target.

¶ 8 After a bench trial, the trial court ruled in Target's favor. The court made numerous findings, including:

- the Prestige employee, acting in the scope of her employment, caused Cleveland's injuries;
- the Prestige employee was negligent in causing Cleveland's injuries;
- Cleveland and Target were not negligent in any respect; and
- Prestige was contractually required to indemnify Target for its past and future damages.

¶ 9 The court awarded Target damages for the costs it had already incurred and for the costs it would continue to incur in compensating Cleveland. However, the court declined to award Target the full amount of damages it sought. Specifically, the court did not award damages for further independent medical examinations because it found that the need for such examinations was speculative. It also reduced the total award by $56,827.26 because that amount duplicated Social Security retirement payments that Cleveland was receiving.

¶ 10 Prestige appeals the future damages awarded to Target.

## II. Future Damages

¶ 11 Prestige contends that the trial court erred in awarding Target future damages in three categories: (1) future medical treatment; (2) future disability payments; and (3) future medical management costs [1]. Prestige argues that there is no support for such future damages. We disagree.

¶ 12 As an initial matter, there are two threshold questions we must answer: (1) Which state's law applies? (2) Did Prestige preserve the future damages question for appellate review?

### A. Governing Law

¶ 13 The parties' cleaning contract contains a choice of law provision, which states that Minnesota law shall "govern all matters arising out of or related to this Agreement, including its interpretation, construction, performance or enforcement."

¶ 14 Consistent with the Restatement (Second) of Conflict of Laws § 187 (1971) (Restatement), we will apply the law chosen by the parties unless there is no reasonable basis for their choice or unless applying the chosen state's law would be contrary to the fundamental policy of the state whose law would otherwise govern. *Hansen v. GAB Bus. Services, Inc.*, 876 P.2d 112, 113 (Colo.App.1994). Here, there is a reasonable basis for selecting Minnesota law because Target is headquartered there. *Cf. id.* Moreover, neither party has argued that we should not apply Minnesota law because of a fundamental policy of Colorado. *Cf. id.*

¶ 15 Accordingly, we will apply Minnesota law to all substantive legal matters. *See id.* However, we will apply Colorado law to all matters of judicial administration, including the procedures by which controversies are brought into Colorado courts and the rules prescribing how litigation shall be conducted.[2] *Apache Village, Inc. v. Coleman Co.*, 776 P.2d 1154, 1155 (Colo.App.1989); Restatement § 122 comment a. As the forum court, we are more concerned with the function and administration of our courts. *See Apache Village, Inc.*, 776 P.2d at 1155; Restatement § 122 comment a.

¶ 16 A state's substantive law generally concerns parties' rights and liabilities, whereas a state's rules of judicial administration generally concern how litigation must be conducted and how court processes will be administered. Restatement § 122 cmt. a. Unlike a state's substantive law, parties do not usually consider a state's judicial administration rules when contractually selecting a particular state's law. *See id.* Thus, "there is no danger of unfairly disappointing their hopes by applying the forum's rules in such matters." *Id.*

¶ 17 Here, we must determine under Colorado law whether the following three matters are substantive legal matters requiring us to apply Minnesota law, or whether they are simply matters of judicial administration permitting us to apply Colorado law: (1) Prestige's contention that there is insufficient evidence to support the future damages award; (2) Target's contention that the future damages issue is not preserved for appellate review; and (3) the applicable standard of review.

---

1. In its appellate briefs, Prestige asserts that there is no evidence supporting the damages awarded for "future attorney fees." However, in its briefs and at oral arguments, Prestige challenged an $1,859.30 annual expense. As acknowledged by Prestige at oral arguments, this expense is not for "attorney fees," but is for "medical management expenses." Accordingly, we address the sufficiency of evidence supporting damages for future medical management costs and not future attorney fees.

2. We use the term "judicial administration" instead of "procedure" because, as noted in Re-

statement § 122 comment b, the substance-procedure dichotomy has "led some courts into an unthinking adherence to precedents that have classified a given issue as 'procedural' or 'substantive,' regardless of what purposes were involved in the earlier classifications." "[F]or example, a decision classifying burden of proof as 'procedural' for local law purposes, such as in determining the constitutionality of a statute that retroactively shifted the burden, might mistakenly be held controlling on the question whether burden of proof is 'procedural' for choice-of-law purposes." Restatement § 122 comment b.

¶ 18 We conclude that the first matter—the evidence needed to support a future damages award—is substantive because damages are the measure of a party's liability. *See id.* (substantive law primarily concerns the parties' rights and liabilities); *see also Marine Midland Bank v. Kilbane*, 573 F.Supp. 469, 470 (D.Md.1983) (damages are a substantive, not procedural, matter); *Paine Webber Jackson & Curtis, Inc. v. Winters*, 22 Conn.App. 640, 579 A.2d 545, 550 (1990) (liability and damages are substantive issues); *Cap Gemini Am., Inc. v. Judd*, 597 N.E.2d 1272, 1281 (Ind.Ct.App.1992) (type, measure, and amount of damages are substantive issues); *ARY Jewelers, L.L.C. v. Krigel*, 277 Kan. 464, 85 P.3d 1151, 1162 (2004) ("[b]oth the measure of damages for breach of contract[ ] and the rate of interest allowed as part of those damages" "are substantive issues"); *Phibro–Tech, Inc. v. Osmose Holdings, Inc.*, No. BER–C–365–05, 2007 WL 1989431, at *17 (N.J.Super.Ct.App.Div.2007) (unpublished opinion) ("Generally, and here, damages follow the substantive law."); *cf. Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 77 P.3d 439, 440 (2003) (treble damages are a substantive legal issue subject to the state law selected in a contractual choice of law provision). Moreover, damages matter greatly to parties, and it is reasonable to assume that parties would consider a state's laws concerning damages when contractually selecting the applicable law. *See* Restatement § 122 cmt. a. Therefore, we will apply Minnesota law to the quantum of evidence needed to support Target's future damages award.

¶ 19 We conclude that the remaining two issues—the legal standards governing preservation for appellate review and the standard of review—are matters of judicial administration. *See, e.g., Arkoma Basin Exploration Co. v. FMF Associates 1990–A, Ltd.*, 249 S.W.3d 380, 388 (Tex.2008) (applying forum's law to the procedural, nonsubstantive issue of preservation of error); *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 576–77 (Tex.App.2012) (same); *Vertopoulos v. Siskiyou Silicates, Inc.*, 177 Or.App. 597, 34 P.3d 704, 707 n. 4 (2001) ("The law of the forum state ... applies to procedural matters such as preserva-

tion of issues for appellate review."); *River Mgmt. Corp. v. Lodge Properties Inc.*, 829 P.2d 398, 401 (Colo.App.1991) (applying substantive law of state that parties had contractually selected, but applying Colorado law to procedural issues, including the standard of review). These issues concern how parties conduct litigation and how courts administer cases. *See* Restatement § 122 cmt. a. Accordingly, we will apply Colorado law to the legal standards governing preservation for appellate review and the standard of review.

### B. Issue Preservation

¶ 20 Target contends that Prestige failed to preserve for appellate review its challenge to the sufficiency of evidence supporting the court's future damages award. Regardless of whether a party must raise a sufficiency of the evidence challenge to a trial court to preserve the issue for appellate review, we conclude that Prestige sufficiently preserved the issue here.

¶ 21 In its closing argument, Prestige argued the following:

> [W]e do not believe that Target has proven its damages, especially with respect to its future damages. Dr. Aschberger ... testified that regarding the future, he doesn't know what's going to happen. A lot of it is unknown.... We don't know how she [Cleveland] is going to do, and so, for this Court to base a damage award on pure speculation without some good-faith basis, would cause us substantial injustice in this matter....
>
> Now Target wants this Court to believe that it's going to pay another half a million or more in the future. The evidence just simply does not support that. The evidence does support the fact that future medical services provided for Ms. Cleveland, which are unknown, will be provided at a discounted rate. The numbers just don't add up when you look at Target's damages compared to what's been paid in the past, what may occur in the future, and that there's no evidence supporting future surgeries. So, we would leave the Court with the thought that there's many unknowns, and it's all about speculation in

terms of future damages. And we would ask that the Court find that the indemnity provision has not been triggered in this matter.

¶ 22 Moreover, in its oral ruling, the court stated:

> The big issue here is future damages. The defense has argued that damages are too speculative and that Target did not prove the damages in this case. And the Court would note that the same argument can be made in any personal injury case that damages in the future, even if they are deemed to be necessary, you might not have an exact figure, but that doesn't make them speculative damages. The things that we do know for sure are, [court details its findings and the supporting evidence].

¶ 23 Prestige's argument, together with the court's ruling, sufficiently preserved the issue for appeal. *See Estate of Keenan v. Colorado State Bank & Trust,* 252 P.3d 539, 548 (Colo.App.2011) ("[B]ecause our review of the record discloses that his lawyer raised this issue in closing argument, we will address it here."); *Berra v. Springer & Steinberg, P.C.,* 251 P.3d 567, 570 (Colo.App.2010) ("[b]ecause [appellant's] closing argument essentially presented to the trial court the sum and substance of the argument it now makes on appeal, we consider that argument properly preserved for appellate review"; "to preserve the issue for appeal all that was needed was that the issue be brought to the attention of the trial court and that the court be given an opportunity to rule on it"; "no talismanic language is required to preserve an issue").

### C. Standard of Review

¶ 24 Following a bench trial, we defer to a trial court's factual findings unless they are so clearly erroneous as to find no support in the record. *See Bockstiegel v. Bd. of County Commissioners,* 97 P.3d 324, 328 (Colo.App. 2004). It is the trial court's sole province to resolve disputed factual issues and to determine witnesses' credibility, the weight to accord testimony, and the inferences to be drawn from the evidence. *City of Fountain v. Gast,* 904 P.2d 478, 482 (Colo.1995). We may not reweigh evidence or substitute our

judgment for the trial court's. *In re Marriage of Rahn,* 914 P.2d 463, 465 (Colo.App. 1995).

¶ 25 The amount of damages is likewise within the trial court's sole province, and we will not disturb an award unless it is completely unsupported by the record. *Boulder Meadows v. Saville,* 2 P.3d 131, 140 (Colo. App.2000). Thus, if the damages awarded can be supported under any legitimate measure of damages, we may not overturn that award. *Averyt v. Wal–Mart Stores, Inc.,* 265 P.3d 456, 462 (Colo.2011). Moreover, when reviewing a damages award, we view the record in the light most favorable to the prevailing party and draw every inference deducible from the evidence in that party's favor. *Id.*

### D. Sufficiency of Evidence Supporting Future Damages

██ ¶ 26 To recover future damages under Minnesota law, a plaintiff must satisfy two requirements:

(1) He or she must show that future damages are more likely than not to occur, *Pietrzak v. Eggen,* 295 N.W.2d 504, 507 (Minn.1980); and

(2) He or she must present expert testimony estimating the amount of future damages, *Kwapien v. Starr,* 400 N.W.2d 179, 184 (Minn.Ct.App.1987).

██ ¶ 27 As to the first requirement, a plaintiff need not present evidence that is unequivocal or establishes future damages to an absolute certainty. *Pietrzak,* 295 N.W.2d at 507; *Carpenter v. Nelson,* 257 Minn. 424, 101 N.W.2d 918, 920 (1960). Rather, a plaintiff need only prove, by a preponderance of the evidence, that future damages are reasonably certain to accrue. *Pietrzak,* 295 N.W.2d at 507. Accordingly, a plaintiff may receive an award of future damages if he or she shows that such damages are more likely than not to occur. *See id.*

██ ¶ 28 Moreover, although medical evidence may be helpful, expert medical testimony is not the exclusive means of proving that a plaintiff will suffer future damages or ongoing injuries. *See Pagett v. N. Elec. Sup-*

*ply Co.,* 283 Minn. 228, 167 N.W.2d 58, 65 (1969); *Renswick v. Wenzel,* 819 N.W.2d 198, 205 (Minn.Ct.App.2012); *Krueger v. Nordstrom,* 367 N.W.2d 671, 675 (Minn.Ct.App. 1985). Other evidence may suffice, "such as showing that [he or she] is not fully recovered at the time of trial." *Pagett,* 167 N.W.2d at 65; *accord Renswick,* 819 N.W.2d at 205; *Krueger,* 367 N.W.2d at 675.

¶ 29 As to the second requirement, a fact finder cannot blindly speculate how much future medical expenses will be. *Kwapien,* 400 N.W.2d at 184. Rather, an expert must provide an estimate of the future damages. *See id.*

¶ 30 Here, as stated, Prestige contends that the trial court erred in awarding Target future damages in three categories: (1) medical treatment; (2) disability payments; and (3) medical management costs. Prestige argues that there is no evidence supporting such damages. We reject each argument in turn because, as explained below, the trial court's future damages awards for these categories are not "completely unsupported by the record." *Boulder Meadows,* 2 P.3d at 140.

### 1. Future Medical Treatment

¶ 31 Viewing the record in the light most favorable to Target and drawing every inference deducible from the evidence in Target's favor, we conclude there is sufficient evidence to support the damages award for future medical treatment. See *Averyt,* 265 P.3d at 462. Indeed, Target satisfied the two requirements for recovering these future damages.

¶ 32 First, Target presented evidence showing that it will, more likely than not, incur damages for Cleveland's future medical treatment. Four witnesses each spoke to varying degrees of Cleveland's need for future medical treatments. Most notably, Cleveland testified by video because she was having surgery that morning. She also testified, as did plaintiff's other witnesses, that another total knee replacement surgery was planned. Cleveland's physician also testified that Cleveland will need additional surgeries and rehabilitation. Likewise, Target's work-

ers' compensation claims expert testified that Cleveland has additional surgeries, therapy, and medications "that are due."

¶ 33 This evidence is sufficient to show that Target will incur future medical costs. *Cf. Pietrzak,* 295 N.W.2d at 507 (evidence was sufficient to support instruction to jury on future damages where doctor testified that "over 50% of a group of 100 individuals with x-rays identical to those of plaintiff would eventually undergo knee reconstructive surgery"); *Hake v. Soo Line Ry. Co.,* 258 N.W.2d 576, 581–83 (Minn.1977) (evidence was sufficient to support future damages award where doctor testified that plaintiff would probably have to have another surgery within fifteen years); *Dornberg v. St. Paul City Ry.,* 253 Minn. 52, 91 N.W.2d 178, 183 (1958) (evidence was sufficient to support future damages award where doctor testified that "while no one could definitely tell positively that a future [surgery] would definitely be necessary, ... the additional injury definitely increased the possibility that a [surgery] might be necessary in the future"); *Renswick,* 819 N.W.2d at 205 (evidence was sufficient to support future damages award where the victim testified that she still suffered pain, and she was still taking pain medication for wrist pain, even though doctor testified that the plaintiff "may or ... may not" have future pain and that he was not offering "an opinion one way or another"); *Hewitt v. Apollo Group,* 490 N.W.2d 898, 903 (Minn.Ct.App.1992) (evidence was sufficient to support damages award where "there is a fair chance she may require further surgery"); *Thies v. St. Paul's Evangelical Lutheran Church,* 489 N.W.2d 277, 281 (Minn.Ct.App.1992) (evidence was sufficient to support future damages award where "there was an increased risk of retearing [plaintiff's] rotator cuffs, and ... if [plaintiff] continued to have problems ... she would be a candidate for surgery").

¶ 34 Second, Target's workers' compensation claims expert testified to the amount of damages that Target will incur for Cleveland's future medical treatment. He testified that he calculated the medical expenses by considering Cleveland's past medical costs, the future medical treatment that is due, and

her life expectancy. This evidence is sufficient to support the amount of damages awarded for future medical treatment. *See Kwapien*, 400 N.W.2d at 184 (evidence was sufficient to support future damages award where plaintiff presented evidence of the costs of previous physical therapy treatments and an actuarial table with life expectancy figures).

¶ 35 Nevertheless, Prestige argues that, for three reasons, there is insufficient evidence supporting the damages awarded for future medical treatment: (1) no evidence suggests that future medical expenses necessarily will be incurred; (2) there was no medical testimony about the need for specific procedures to be repeated at specific intervals, or about each procedure's estimated cost; and (3) there was no medical evidence establishing that the cost of future medical treatments will be the same as they had been up to that point.

¶ 36 However, none of these propositions is required under Minnesota law to recover future damages. *See Pietrzak*, 295 N.W.2d at 507 ("it is not necessary that the evidence be unequivocal or that it establish future damages to an absolute certainty"); *Pagett*, 167 N.W.2d at 65 ("[e]xpert medical testimony is not the exclusive means of proving future damages"); *accord Renswick*, 819 N.W.2d at 205; *Krueger*, 367 N.W.2d at 675.

### 2. Future Disability Payments

¶ 37 Applying the same standard of review as in subsection 1 above, we conclude that there is sufficient evidence to support the damages award for future disability payments. *See Averyt*, 265 P.3d at 462. Again, Target satisfied the two requirements for recovering these future damages.

¶ 38 First, Target presented evidence showing that it will, more likely than not, incur damages for future disability payments. Target's workers' compensation legal expert—not the workers' compensation claims expert—testified that Cleveland's claim fits the profile for permanent total disability benefits, which would entitle her to lifetime disability payments. He based his opinion on her age, work restrictions, knee and shoulder problems that were caused by the workplace

injury, and vocational background. He also testified that, based on similar cases, she will qualify for an award of ongoing medical care, follow-up visits with her physician, and prescription medication coverage. Likewise, Target's workers' compensation claims expert testified that, based on the facts of Cleveland's case, she will receive permanent total disability benefits.

¶ 39 Moreover, the trial court received evidence regarding Cleveland's injuries, her past and planned surgeries, her other medical treatment, her previous position stocking shelves at Target, her age, and the fact that she had not worked since her first surgery. Taken together, the evidence is sufficient to support the trial court's finding that Target will incur damages for future disability payments. *Cf. Dornberg*, 91 N.W.2d at 183–85; *Hewitt*, 490 N.W.2d at 903; *Thies*, 489 N.W.2d at 281.

¶ 40 Second, Target's workers' compensation claims expert testified to the amount of damages that he calculated the amount of Cleveland's disability payments by taking the weekly rate under the workers' compensation statute and multiplying it by the number of weeks that Target will be expected to pay the benefits. This evidence is sufficient to support the amount of damages awarded to Target for future disability payments. *Cf. Kwapien*, 400 N.W.2d at 184 (evidence was sufficient to support future damages award where plaintiff presented evidence of the costs of previous physical therapy treatments and an actuarial table with life expectancy figures).

### 3. Future Medical Management Expenses

¶ 41 Again, applying the same standard of review as in subsections 1 and 2 above, we conclude that there is sufficient evidence to support the damages award for future medical management expenses. *See Averyt*, 265 P.3d at 462. And, again, Target satisfied the two requirements for recovering these future damages.

¶ 42 First, Target's workers' compensation claims expert testified that the medical management expenses reflect the process by which medical bills "are sent through [Tar-

get's] bill review process where they evaluate whether or not the charges exceed or are in compliance with … the Colorado official fee schedule." Because, as discussed, Target presented evidence that Cleveland will continue to receive medical treatment, there is sufficient evidence that the medical management expenses are more likely than not to accrue. *Cf. Dornberg*, 91 N.W.2d at 183–85; *Hewitt*, 490 N.W.2d at 903; *Thies*, 489 N.W.2d at 281.

¶ 43 Second, Target's workers' compensation claims expert testified that he expects Target will have to pay in medical management expenses the "reserve" amounts listed in the documentary exhibit he prepared. The exhibit contained the $1,859.30 figure that Prestige challenges here. Viewing the evidence in the light most favorable to Target and drawing every inference deducible from the evidence in Target's favor, as we must, this evidence is sufficient to support the amount of damages awarded for future medical management costs. *See Averyt*, 265 P.3d at 462.

¶ 44 The judgment awarding future damages is affirmed.

Judge ROMÁN and Judge FURMAN concur.