Opinion by CHIEF JUDGE LOEB
¶ 1 In this debt collection action, defendant, Jason Cooke, appeals from the summary judgment in favor of plaintiff, Mountain States Adjustment (MSA), assignee of Bank of the West. He also appeals from the court's denial of his cross-motion for summary judgment. Because we conclude that the district court erred by not applying the law of the state chosen in the debt instrument, we reverse the judgment and remand with directions for entry of judgment in favor of Cooke.
I. Background and Procedural History
¶ 2 In August 2004, Cooke signed a note (the Note) with Commercial Federal Bank (CFB) for a home equity loan. Cooke resided in Colorado, and the home which was the collateral for the Note (subject property) was in Colorado. CFB was headquartered in Nebraska and the terms of repayment for the Note state, "[t]his agreement is governed by federal law, and to the extent applicable, the laws of Nebraska."
¶ 3 The record shows that CFB merged into Bank of the West, a California bank, in December 2005. Cooke's repayment terms under the Note did not change as a result of the merger nor was Cooke asked to sign a new loan agreement naming Bank of the West as the lender on the Note or successor in interest to CFB.
¶ 4 In April 2009, the company holding the first mortgage on the subject property commenced foreclosure proceedings. Bank of the West did not participate in the foreclosure proceedings, nor did it attempt to recover any funds from the foreclosure. However, on June 19, 2009, Bank of the West sent a "30 Day Notice of Demand and Intent to Accelerate" letter to Cooke, stating that Cooke had failed to make the March, April, and May 2009 payments on the Note, and that it may accelerate the sums due under the Note without further demand. The record does not reflect any further communication between Bank of the West and Cooke.
¶ 5 On February 14, 2014, Bank of the West assigned Cooke's Note to MSA. On July 15, 2014, MSA filed this collection action against Cooke in Denver District Court seeking recovery of amounts due under the Note. Cooke answered the complaint and admitted that he signed the Note; as pertinent here, he alleged as an affirmative defense that MSA's claim was barred by the applicable statute of limitations.
¶ 6 In January 2015, MSA filed a motion for summary judgment, arguing that Cooke admitted to being the signatory under the Note and that the facts were undisputed that he was in default and had not paid the amounts due and owing under the Note. Cooke filed a cross-motion for summary judgment, asserting that, as a matter of law, MSA's claim was barred by the applicable statute of limitations.
¶ 7 As relevant here, in his cross-motion for summary judgment, Cooke asserted that Nebraska law applied pursuant to the Note's choice of law provision and that the Nebraska limitations period to bring suit for an alleged breach of a written contract is five years. Further, Cooke alleged Bank of the West had knowledge of his default by April 1, 2009, after he missed his March payment. Thus, he argued, Bank of the West or its assignee should have filed for recovery of the monies due under the Note by April 1, 2014, but failed to do so.
¶ 8 Regarding the choice of law issue, MSA responded by arguing that (1) the choice of law provision in the Note was ambiguous; (2) Colorado law should apply because of the significant relationship between Colorado and the Note; (3) under the Restatement (Second) of Conflict of Laws section 187 (Am. Law Inst.1971), the Note held no significant *822 relationship with the state of Nebraska and was not enforceable; and (4) under the plain language of the choice of law provision, federal law should first apply and that a federal court sitting in diversity would apply the law of the forum state in which it is sitting (here, Colorado).
¶ 9 In a written order, the district court agreed with MSA and entered summary judgment in its favor for the amounts due and owing under the Note; the court also denied Cooke's cross-motion for summary judgment. As pertinent here, the court concluded that Colorado law applied rather than Nebraska law, and that, accordingly, MSA's claim was not barred by Nebraska's statute of limitations. In making its findings, the court emphasized and heavily relied on the number of contacts and relationships MSA and Cooke have had with Colorado.
¶ 10 This appeal followed.[1] The sole issue on appeal is whether the district court erred by ruling that Colorado law applies here, rather than Nebraska law as stated in the choice of law provision in the Note. The parties appear to agree that resolution of the choice of law issue is dispositive of this case. Thus, if Colorado law applies, MSA's claim is not barred by Colorado's six-year statute of limitations, and summary judgment was properly entered in favor of MSA. However, if Nebraska law applies, the facts in the record are undisputed that MSA's claim would be barred by Nebraska's five-year statute of limitations, and judgment should be entered, as a matter of law, for Cooke. For the reasons discussed below, we conclude that Nebraska law applies. Accordingly, we reverse the judgment for MSA and remand the case for entry of judgment in favor of Cooke.
II. Standard of Review
¶ 11 We review the grant of a summary judgment motion de novo. W. Elk Ranch, L.L.C. v. United States , 65 P.3d 479, 481 (Colo.2002).
¶ 12 Summary judgment is appropriate when the pleadings and supporting documentation show that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56 ; McDonald v. Zions First Nat'l Bank, N.A., 2015 COA 29, ¶ 45, 348 P.3d 957. However, summary judgment is a drastic remedy and should be granted only if it has been clearly established that the moving party is entitled to a judgment as a matter of law. McDonald, ¶ 45.
¶ 13 Enforceability of a choice of law provision and a court's decision regarding choice of law are reviewed de novo. Shoen v. Shoen, 2012 COA 207, ¶ 11, 292 P.3d 1224 ; see Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 956 (10th Cir.1992) ; see also Adams Reload Co., Inc. v. Int'l Profit Assocs., Inc., 143 P.3d 1056, 1058 (Colo.App.2005) (issues regarding forum selection clauses are subject to de novo review).
III. Applicable Law
¶ 14 A court must interpret a contract in its entirety, harmonizing and giving effect to all provisions so that none will be rendered meaningless. Hoff v. Indus. Claim Appeals Office, 2014 COA 137M, ¶ 37, 383 P.3d 50 (cert. granted on other grounds Sept. 8, 2015). In the case of any doubt with respect to a contract term, it should be construed most strongly against the drafter. Valdez v. Cantor, 994 P.2d 483, 486 (Colo.App.1999).
¶ 15 Choice of law provisions are ordinarily given effect as they are considered a clear manifestation of the parties' intentions. Pirkey v. Hosp. Corp. of Am., 483 F.Supp. 770, 773 (D.Colo.1980). The absence of words such as "shall," "exclusive," or "only" in such a contract provision does not necessarily make it permissive. Vanderbeek v. Vernon Corp., 25 P.3d 1242, 1247-48 (Colo.App.2000) (considering a forum selection provision). "No specific language is required for a provision to be mandatory." Id. Instead, what is required is that the language of the parties' agreement be clear in its designation. Id.
*823 ¶ 16 With respect to choice of law issues, Colorado has adopted the approach set forth in the Restatement (Second) of Conflict of Laws [hereinafter RST]. Wood Bros. Homes, Inc. v. Walker Adjustment Bureau, 198 Colo. 444, 447-48, 601 P.2d 1369, 1372-73 (1979) ; Target Corp. v. Prestige Maint. USA, Ltd., 2013 COA 12, ¶ 14, 351 P.3d 493. Specifically, as relevant here, when the parties to a contract have chosen the law to govern their contract, RST section 187 states:
(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice....
¶ 17 Thus, Colorado courts "will apply the law chosen by the parties unless there is no reasonable basis for their choice or unless applying the chosen state's law would be contrary to the fundamental policy of the state whose law would otherwise govern." Prestige Maint. USA, Ltd., ¶ 14. When the parties have made a choice as to the state of the applicable law, "they will usually refer expressly to the state of the chosen law in their contract, and this is the best way of insuring that their desires will be given effect." RST § 187 cmt. a.
¶ 18 "The [court] will not apply the chosen law ... if the parties had no reasonable basis for choosing this law. The forum will not, for example, apply a foreign law which has been chosen by the parties in the spirit of adventure or to provide mental exercise for the judge." RST § 187 cmt. f. However,
[w]hen the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when this state is that where ... one of the parties ... has his principal place of business.
Id.
¶ 19 In cases where the parties have not chosen the law to govern their contract, section 188 of the Restatement applies. RST § 188(2) ("In the absence of an effective choice of law by the parties (see § 187 )...."); RST § 188 cmt. a ("The rule of this Section applies in all situations where there has not been an effective choice of the applicable law by the parties.") Section 188 states that the law of the state that has the most significant relationship to the transaction and the parties will apply. RST § 188(1). Section 188 lists five factors for a court to consider in determining which state's law is applicable: place of contracting; place of negotiation; place of performance: location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation, and place of business of the parties. RST § 188(2). These factors are not part of the analysis under RST section 187.
¶ 20 Regarding conflicts of law concerning statutes of limitation, at one time limitation periods were considered procedural law and, therefore, Colorado courts generally applied Colorado's statutes of limitation to all claims. Jenkins v. Haymore, 208 P.3d 265, 267 (Colo.App.2007). However, this approach led to increased forum shopping and, in 1984, the General Assembly adopted the Uniform Conflict of Laws-Limitations Act, sections 13-82-101 to - 107, C.R.S.2015, which effectively treats limitation periods as substantive law. As relevant here, the Act states that if the claim before the court is substantively based on the law of another state, the limitation period of that state applies. § 13-82-104(1)(a), C.R.S.2015.
¶ 21 Colorado law provides for a six-year statute of limitations for a claim to recover monies due under a financial instrument, while Nebraska law has a five-year statute of limitations for actions based on a written contract.[2] § 13-80-103.5, C.R.S.2015; Neb.Rev.Stat. Ann. § 25-205 (West 2015).
*824 IV. Application
¶ 22 For the reasons explained below, we conclude that, under the proper analysis of choice of law principles, Nebraska law applies to this case and, accordingly, the district court erred in granting MSA's motion for summary judgment. In our view, the district court's analysis improperly conflated RST sections 187 and 188 and erroneously considered federal law concerning choice of law issues in diversity cases. We further conclude that, based on the undisputed fact that MSA filed its complaint outside of the applicable Nebraska limitations period, MSA's claim is barred, and Cooke is entitled to entry of judgment in his favor.
A. Preliminary Issue
¶ 23 Before addressing the merits of the parties' contentions, we first address MSA's assertion that Cooke's objections to venue or forum were not preserved. We assume that MSA's assertion is based on Cooke's occasional use of the phrase "choice of forum" in his opening brief. However, Cooke makes no arguments on appeal (nor did he in the district court) regarding MSA's choice of forum, nor does he argue that MSA's claim was improperly brought in Colorado, or that the Note even contains a choice of forum provision.[3] Rather, his arguments are based on issues regarding choice of law, and all such arguments were properly preserved in the district court.
B. The Choice of Law Provision is Unambiguous and Effective
¶ 24 The general terms section of the Note states that "[t]his agreement is governed by federal law, and to the extent applicable, the laws of Nebraska." We conclude this is a clear, express, and unambiguous designation by the parties as to choice of law, and that, under the circumstances here, Nebraska law governs the Note. See RST § 187 cmt. a.
¶ 25 On appeal, MSA contends that the Note does not contain an effective choice of law provision because the language is not mandatory. We disagree.
¶ 26 Contrary to MSA's contention, the language of the provision in the Note is a clear statement of choice of law by the parties. As noted, the fact that the provision does not include words such as "shall," "exclusively," or "only" does not necessarily make the provision permissive and, indeed, no specific language is required to make a selection provision mandatory. Vanderbeek, 25 P.3d at 1247-48. What matters is the parties' intent and clear designation of the choice of law. Id. at 1248 ; RST § 187 cmt. a (When the parties have made a choice of law selection, "they will usually refer expressly to the state of the chosen law in their contract, and this is the best way of insuring that their desires will be given effect.").
¶ 27 Here, the Note is clearly a form lending document prepared by CFB. At the time the Note was signed, CFB was headquartered in Nebraska, creating a reasonable inference that CFB intended to choose Nebraska as its governing law. Other federal and state courts have considered choice of law language similar to that at issue here and have concluded that such language constitutes an effective and enforceable choice of law. See, e.g., OrbusNeich Med. Co., Ltd., BVI v. Bos. Sci. Corp., 694 F.Supp.2d 106, 114 (D.Mass.2010) ("Had the choice of law provision merely said 'this agreement is governed by the laws of Massachusetts,' it clearly would have conveyed to this court that the parties intended for Massachusetts substantive law to apply to disputes arising under the contract. The parties needed go no further to express such an intention."); Bad Ass Coffee Co. v. Naughty Donkey Enters., LLC, 64 So.3d 659, 663 (Ala.Civ.App.2010) (concluding that the court must apply Utah law because of a provision in the parties' agreement that stated "[t]his Agreement is accepted in the State of Utah and will be governed by Laws of Utah"); Klein v. On Deck Capital, Inc., 48 Misc.3d 1204(A), at *2, 2015 WL 3936167 (N.Y.Sup.Ct.2015) (concluding that an agreement stating "our relationship including this Agreement and any claim, dispute or controversy ... arising from or relating to this Agreement is governed by ... applicable federal law and (to the extent not *825 preempted by federal law) Virginia law ..." reflected the parties' intention that Virginia law apply).
¶ 28 Moreover, even if we were to agree with MSA that the choice of law provision is somehow ambiguous (which we conclude it is not), the language of the disputed provision should be more strictly construed against the drafter, here CFB, and its successor, MSA. Valdez, 994 P.2d at 486 ; see also Perez v. Qwest Corp., 883 F.Supp.2d 1095, 1118 (D.N.M.2012) (noting that both New Mexico and Colorado follow the principle that a court should construe a contract against the one who drafted it).
¶ 29 Additionally, the quotation by MSA in its answer brief of "typical" language for a "mandatory choice of law or forum selection provision" is misplaced. First, MSA quotes a forum selection provision, which is not at issue here. This is significant because forum selection jurisprudence regarding permissive versus mandatory language is very well-developed because of the potential for automatic dismissals. See, e.g., Edge Telecom, Inc. v. Sterling Bank, 143 P.3d 1155, 1163-64 (Colo.App.2006) ; Vanderbeek, 25 P.3d at 1247. Such is not the case with choice of law provisions. Second, as the division in Vanderbeek held, no specific language is required to make a provision mandatory-the key inquiry is whether the choice was clearly designated. 25 P.3d at 1247. Here, the parties clearly designated Nebraska law as the governing law.
¶ 30 We also reject MSA's argument (and the district court's reliance) on federal diversity precedent. Contrary to MSA's arguments here and in the district court, the language in the choice of law provision referring to federal law, when read in context with the rest of the sentence designating Nebraska law, simply means that if federal law is controlling or informative on a substantive issue, federal law applies; however, if federal law is silent, then Nebraska law applies.
¶ 31 It is undisputed that there is no federal statute of limitations for a breach of contract claim or a claim to recover a debt.[4] Under Nebraska law, however, there is a five-year statute of limitations for breach of written contract claims. Neb.Rev.Stat. Ann. § 25-205. Therefore, under the plain language of this provision, because federal law is silent, Nebraska law governs the statute of limitations issue in this case.
¶ 32 MSA relies on Boyd Rosene & Associates, Inc. v. Kansas Municipal Gas Agency, 123 F.3d 1351, 1352 (10th Cir.1997), for the proposition that a federal court sitting in diversity applies the choice of law rules from the forum state in which it is sitting. However, that case is simply irrelevant here because the procedural context of this case is not a federal court sitting in diversity and because the plain language of the choice of law provision states that Nebraska law applies when federal law is silent. See also § 13-82-104(1)(a) (providing that if a claim is substantively based upon the law of another state-here, Nebraska-the limitation period of that state applies).
¶ 33 For the reasons stated above, we conclude that the choice of law provision at issue here is clear, unambiguous, and effective, and that the provision reflects the parties' selection of Nebraska law to govern this case.
C. RST Section 187 Applies
¶ 34 Because there is a valid and effective choice of law provision, this case is governed by RST section 187. Wood Bros. Homes, Inc., 198 Colo. at 447-47, 601 P.2d at 1372-73 (adopting RST for contract cases). As relevant here, section 187 provides that the "law of the state chosen by the parties to govern their contractual rights and duties will be applied" unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." RST § 187(2)(a) (emphasis added).[5]
*826 ¶ 35 We conclude that, as a matter of law, RST section 187(2)(a) mandates that Nebraska law governs the statute of limitations issue in this case because the undisputed record shows both that Nebraska had a substantial relationship to the parties or the transaction (i.e., the Note) and that there was a reasonable basis for the contracting parties' choice of law.
¶ 36 First, Nebraska is substantially related to the contracting parties and the Note because CFB, the original lender under the Note upon which MSA now brings suit, was headquartered in Nebraska. See Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, 1153 (1992) (concluding that, under RST section 187(2)(a), Hong Kong-"the chosen state"-clearly had a substantial relationship to the parties where the plaintiff was incorporated in Hong Kong and had a registered office there); Expansion Pointe Props. Ltd. P'ship v. Procopio, Cory, Hargreaves & Savitch, LLP, 152 Cal.App.4th 42, 61 Cal.Rptr.3d 166, 179 (2007) (citing Nedlloyd and concluding that the substantial relationship and reasonable basis tests under RST section 187(2)(a) were met when one of the parties to the contract at issue there was domiciled in the chosen state).
¶ 37 Second, for similar reasons, there is a reasonable basis for the parties' choice. Comment f to section 187 clarifies that the parties will be held to have had a reasonable basis for their choice of a particular state's law when the chosen state is "where one of the parties is domiciled or has his principal place of business." RST § 187 cmt. f. Further, at least two divisions of this court have applied this rule to conclude that there was a reasonable basis for the parties' choice of law. In Hansen v. GAB Bus. Servs., Inc., 876 P.2d 112, 113 (Colo.App.1994), the division considered a choice of law provision stating that the document at issue "was to be construed under, and governed by, New York law." The division noted that neither party was located in New York, but that the defendant was previously headquartered in New York for many years. Id. The division concluded that the location of the party's previous headquarters was a reasonable basis for applying New York law. Id. In our view, the reasoning in Hansen is directly analogous here, where CFB, the original lender under the Note (which was a CFB form document), was headquartered in Nebraska, the state designated by the parties in their choice of law provision.
¶ 38 Similarly, in Prestige Maintenance USA, Ltd., ¶ 14, a division of this court concluded that there was a reasonable basis for the parties' selection of Minnesota law because Target Corporation, the plaintiff, was headquartered in that state.
¶ 39 Because CFB was headquartered in Nebraska, and because CFB prepared, provided, and signed the Note that MSA now seeks to enforce, Nebraska law applies. Id. ; Valdez, 994 P.2d at 486 ; Hansen, 876 P.2d at 113. Contrary to MSA's arguments, it is simply not relevant that MSA is based in Colorado and allegedly has no ties to Nebraska because MSA is bound by the terms of the Note agreed to by its original predecessor, CFB. It is undisputed that when CFB merged into Bank of the West, Bank of the West became the holder of Cooke's Note. Nothing in the record indicates that CFB, Bank of the West, or MSA ever sought to change the terms of the Note by requesting that Cooke sign a new contract naming Bank of the West as the lender or changing the choice of law provision under which conflicts between the parties were to be resolved. Here, MSA seeks to enforce the original, unamended Note that was signed by CFB. Thus, MSA is bound by the terms of that unamended Note, which includes the choice of law provision at issue here.
¶ 40 MSA relies on RST section 188 and its multi-factor test for determining which of several states' laws should govern this case. But, section 188 simply has no applicability to this case. By its express terms, section 188 applies only in situations where the parties have not made an effective choice of law and, indeed, references section 187 for cases where, as here, the parties have made a choice of law. RST § 188(2).
D. Disposition
¶ 41 Finally, we consider the appropriate disposition of this appeal, given our conclusion that the district court erred in its ruling on choice of law and, therefore, improperly *827 granted summary judgment for MSA. First, we reverse the district court's summary judgment in favor of MSA.
¶ 42 Second, based on the undisputed factual record before us, and as requested by Cooke, we remand to the district court with directions to enter judgment in favor of Cooke. MSA has not argued either in the district court or on appeal that it timely filed its complaint within Nebraska's applicable five-year statute of limitations.[6]
¶ 43 Here, the "30 Day Notice of Demand and Intent to Accelerate" letter is dated June 19, 2009, and clearly states that Cooke defaulted by failing to pay his March, April, and May 2009 payments on the Note. In his affidavit in support of his cross-motion for summary judgment, Cooke admitted that the last payment he made on the Note was in February 2009. So, at the earliest, the statute of limitations period began running on April 1, 2009, the date by which the March 2009 payment was late. At the latest, the period began running on June 19, 2009, the date of the demand letter. Either way, the filing period ended no later than June 19, 2014. MSA's complaint was filed on July 15, 2014, and consequently was, on its face, filed outside the five-year statute of limitations period set forth in section 25-205 of Nebraska's statutes.
¶ 44 Because the relevant facts are not disputed, we conclude that MSA's claim is barred by the applicable Nebraska statute of limitations. Cooke is thus entitled to entry of summary judgment in his favor as a matter of law. See McDonald, ¶ 45 (summary judgment appropriate only if it has been clearly established that moving party is entitled to judgment as a matter of law).
V. Attorney Fees
¶ 45 Both Cooke and MSA request attorney fees incurred on appeal. We address each request in turn.
¶ 46 Cooke requests that we "award costs and attorneys' fees and such other relief as this Court deems appropriate." We deny his request because his opening brief does not state any legal basis for his request as required by the appellate rules. C.A.R. 39.5 ("[T]he party claiming attorney fees shall specifically request them, and state the legal basis therefor, in the party's principal brief in the appellate court."); In re Marriage of Wells, 252 P.3d 1212, 1216 (Colo.App.2011) (denying request for attorney fees where no legal basis for recovery was given).
¶ 47 MSA objects to any award of fees to Cooke and simultaneously requests "attorneys' fee [sic] and such other relief this Court deems appropriate." We deny MSA's request because it, too, fails to state any legal basis for an award of fees. C.A.R. 39.5 ; In re Marriage ofWells, 252 P.3d at 1216. In addition, we deny MSA's request because it has not prevailed on appeal. C.A.R. 39.5.
VI. Conclusion
¶ 48 We reverse the district court's judgment and remand with directions for the district court to enter judgment in favor of defendant, Jason Cooke.
NIETO* and MÁRQUEz*, JJ., concur

Ordinarily, there can be no appeal from an order denying a motion for summary judgment. However, here, the district court's order denying Cooke's cross-motion for summary judgment is itself a final appealable order because the summary judgment in favor of MSA effectively ended litigation in the district court. See Mahaney v. City of Englewood, 226 P.3d 1214, 1217 (Colo.App.2009).

Unlike Colorado, Nebraska does not appear to have a specific statute of limitations for collection actions based on a financial instrument. However, as noted above, Nebraska Revised Statutes Annotated section 25-205 (West 2015), sets forth a specific statute of limitations for actions based on a written contract-five years-and here, the parties do not dispute that this statute would govern MSA's claim under the Note if Nebraska law applies.

In fact, Cooke admitted in paragraph seven of his answer that venue in the Denver District Court was proper.

Indeed, this may be because, as MSA acknowledges, federal courts apply the substantive law of the state in which they sit, including the state's choice of law rules. Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency, 123 F.3d 1351, 1352 (10th Cir.1997).

RST section 187(2)(b) provides that the law of the chosen state will not apply if "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue.... " MSA has never contended that this subsection is applicable here, and, thus, it has no bearing on our analysis.

Indeed, the district court specifically found that, although there was no genuine issue of material fact as to Cooke's cross-motion for summary judgment, the court could appropriately deny that motion as a matter of law based on its resolution of the choice of law issue.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2015.